Ramsey Hanafi, SBN 262515
Gelian Belong, SBN 355109
QUINTANA HANAFI LLP
1939 Harrison St., Ste. 202
Oakland, CA 94612
Tel.: (415) 504-3121
Fax: (415) 233-8770
ramsey@qhlegal.com
gelian@qhlegal.com

*Attorneys for Plaintiff*
*Joanne Stockwell*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOANNE STOCKWELL**, an individual, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| v. | 1. **Age Discrimination (Cal. Gov't. Code § 12940);** |
| **AMAZON WEB SERVICES, INC.**, a Delaware corporation; and **DOES 1 through 10**, inclusive, | 2. **Gender Discrimination (Cal. Gov't. Code § 12940);** |
| | 3. **Retaliation (Cal. Gov't. Code § 12940(h));** |
| Defendants. | 4. **Retaliation (Cal. Lab. Code § 1102.5(b)); and** |
| | 5. **Wrongful Termination in Violation Public Policy.** |
| | **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

Plaintiff Joanne Stockwell (herein "Plaintiff") brings this action against Amazon Web Services, Inc. (herein "Defendant") and DOES 1 through 10 (collectively "Defendants") for: 1) age discrimination; 2) gender discrimination; 3) retaliation pursuant to Cal. Gov't Code §

12940(h); 4) retaliation pursuant to Cal. Lab. Code § 1102.5; and 5) wrongful termination in violation of public policy.

## JURISDICTION AND VENUE

1.      The amount in controversy in this action exceeds $75,000 and the parties involved are from different states, therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

2.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claims occurred in this District.

3.      Pursuant to Northern District Local Rule 3-2 (c) & (d), this action should be assigned to San Francisco or Oakland, as the actions giving rise to Plaintiff's claims took place in the County of Contra Costa.

4.      On March 14, 2025, Plaintiff properly notified the California Civil Rights Department ("CRD") of her intent to sue Defendants and has received a "right-to-sue" notice prior to filing this Complaint. A true and correct copy of Plaintiff's "right-to-sue" notice is attached hereto as Exhibit A.

## NATURE OF THIS ACTION

5.      This is an action for relief from Defendant's violation of the California Employment and Housing Act (herein "FEHA"), and the California Labor Code.

6.      Defendant discriminated against Plaintiff during her employment by failing to fulfill its obligations under the FEHA and the California Labor Code.

7.      Plaintiff now seeks compensatory, general, and punitive damages, reasonable attorneys' fees, and costs, as well as other appropriate relief as determined by this Court for Defendant's violations of Plaintiff's rights.

Plaintiff hereby alleges as follows:

## THE PARTIES

8.      Plaintiff is a natural person who was employed by Defendant from January 11, 2021, to June 3, 2024.

9.      Plaintiff is informed and believes, and based thereon, alleges that Defendant is,

*Stockwell v. Amazon Web Services, Inc.* USDC in the Northern District of California Case No. _____
COMPLAINT

and at all times mentioned in this complaint, has been a Delaware corporation, with its principal headquarters at 410 Terry Avenue North, Seattle, Washington. On information and belief, Plaintiff further alleges that Defendant is registered to do business in California under entity number 3568304.

10.     At all material times and for all purposes relevant to the claims made herein, Plaintiff was an "employee" within the meaning of the California Government Code and California Labor Code.

11.     At all material times and for all purposes relevant to the claims made herein, Defendant was an "employer" within the meaning of the California Government Code and California Labor Code. Specifically, Defendant employes five or more employees in California.

12.     Plaintiff is informed and believes, and based thereon, alleges that at all times material hereto, each of the Defendants named herein (including the DOES) was/were the ostensible agent, employee, alter ego and/or joint venturer of, or working in concert with each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity.  To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendant.

## FACTUAL BACKGROUND

13.     Plaintiff began her employment with Defendant on or about January 11, 2021, as "Product Manager." Plaintiff performed her work remotely in the County of Contra Costa.

14.     Plaintiff began her employment under the supervision of Gary Manalus.

15.     Shortly thereafter, Plaintiff was assigned to a new manager, Irina Wolpert.

16.     Under Ms. Wolpert's supervision, Plaintiff performed her role successfully and received only excellent performance ratings.

17.     On or about February 14, 2022, as a result of Plaintiff's positive performance, Plaintiff was promoted to the role "Manager Product Management."

18.     Plaintiff continued to excel in her new role, as evidenced by a performance review issued in or around March 2022, which rated her as having "exceeded Amazon's high-

*Stockwell v. Amazon Web Services, Inc.* USDC in the Northern District of California Case No. _____
COMPLAINT

performance bar for [Plaintiff's] role and level."

19.    In or around October 2022, Plaintiff was again promoted to the role of "Senior Manager Product Management, L7."

20.    On or about November 16, 2022, Plaintiff was assigned to a new manager, Glen Lally. Shortly thereafter, Plaintiff experienced a negative shift in her work environment, characterized by Mr. Lally's aggressive and micromanaging supervisory style.

21.    Despite the negative shift in Plaintiff's work environment under Mr. Lally, Plaintiff performed beyond expectations which resulted in an increase in her team of direct reports to ten people.

22.    In or around March 2023, Plaintiff again received an exemplary performance review, rating her specifically as having "met [Defendant's] high-performance bar."

23.    On or about March 30, 2023, Mr. Lally, through a Team Change Announcement, disclosed that Plaintiff and her female colleague, Tanya Seindel, would be reporting to his newly recruited former male colleague, Matt Swearingen. Additionally, the announcement revealed that Plaintiff's female colleague, Sandi Sandiland, was instructed to report to Katherin Fan, a younger and recently hired former colleague of Mr. Lally, while another colleague Carla Blickensderfer, was expected to report to a male peer, Barney Brown.

24.    On or about March 31, 2023, Plaintiff sent an email to Defendant's General Manager, Jerene Dekate, and Mr. Lally, to address her ongoing concerns with the discriminatory impact and large reduction of women in leadership positions as a result of the layoffs that occurred in or around the beginning of 2023. Specifically, Plaintiff shared her concerns of the drastic reduction of women in leadership positions from 62.5 percent to only 28.6 percent.

25.    In response, Mr. Lally, without discussing the content of Plaintiff's concerns, acknowledged the reduction cited by Plaintiff and asserted his commitment to "developing a diverse leadership team," and that he was nearing the finalization of hiring a single female leader to lead Sales Process and Methodology.

26.    On or about April 25, 2023, Plaintiff was officially assigned to a new manager, Mr. Swearingen—a new hire of Defendant and Mr. Lally's former male colleague. Despite

Plaintiff's longer tenure, greater familiarity with Defendant's current projects, and exceptional performance record, she was assigned to report to Mr. Swearingen, a male colleague at her same level (L7).

27. On or about July 12, 2023, Plaintiff was forced to forfeit and hand over her role as the main liaison and contact for two of Defendant's Sales Operations teams, with whom Plaintiff had previously cultivated relationships, to Mr. Swearingen, despite his inexperience with the learning content development and communications with those teams. Simultaneously, Mr. Swearingen reduced Plaintiff's direct reports from ten to four and prohibited Plaintiff from conducting one-on-one meetings with leadership team members—a practice that had been instrumental to her previous success.

28. On or about September 8, 2023, Plaintiff was informed that her role would transition to a hybrid role beginning October 2023, requiring three in-person appearances at Defendant's San Francisco office.

29. On or about December 12, 2023, Plaintiff was abruptly notified that she was being placed on a Focus performance improvement plan.

30. Shortly after being placed on the plan, Plaintiff challenged her placement on the performance improvement plan and reached out to Defendant's Human Resources (HR) to have it removed from her employment record.

31. On or about January 16, 2024, Plaintiff met with Mr. Swearingen to discuss her concerns about implementation of the Focus plan. During the meeting, Plaintiff and Mr. Swearingen discussed areas for improvement while also agreeing that she was "highly effective at executing" and that "customer obsession is a strength, which drives [Plaintiff's] leadership and communication style." Plaintiff also informed Mr. Swearingen of her intention to further contest the implementation of the Focus plan, and that she had contacted Defendant's HR to remove the plan from her record.

32. On or about February 12, 2024, Plaintiff met with Mr. Lally. During this meeting, Mr. Lally commended Plaintiff and described her leadership as "bar raising" and "flawless." Mr. Lally's remarks echoed comments he had emailed in December 2023, where he recognized

Plaintiff's exceptional work with Defendant.

33.    On February 19, 2024, Defendant's HR employee, Candice Ma, shared with Plaintiff internal performance reviews about Plaintiff, authored by Mr. Swearingen.

34.    The performance review by Mr. Swearingen included comments relating to Plaintiff's age. Specifically, Mr. Swearingen labeled Plaintiff as being "closed off to new ideas with [Plaintiff's] years of experience in product marketing'" and asserted that "Plaintiff had previously been hesitant to accept suggestions due to [Plaintiff's] experience as an executive comms writer."

35.    On or about March 5, 2024, Plaintiff emailed Ms. Ma to request an update on her request to remove the Focus plan from her AWS record. In the email, Plaintiff further outlined why the Focus plan should be removed and cited the contradictory positive feedback she had received from Mr. Lally, direct reports, and her peers.

36.    On or about March 12, 2024, Ms. Ma notified Plaintiff that Mr. Swearingen and Mr. Lally had agreed to Plaintiff's removal from the Focus plan as all conditions in the plan had been met by Plaintiff. On or about March 15, 2024, despite being removed from the Focus plan, Defendant's HR Partner, Brandon Dunaway, informed Plaintiff that the feedback underpinning the Focus plan had been validated by HR and as a result, it could not be removed from Plaintiff's permanent record.

37.    On or about March 19, 2024, Mr. Swearingen delivered Plaintiff's first quarter performance review for 2024. Notably, Plaintiff received a rating of meeting "Amazon's high-performance bar" for the second time during her tenure at AWS.

38.    On or around March 28, 2024, Plaintiff was once again recognized for her outstanding performance when Mr. Lally awarded her the "All-Star" honor, citing her exceptional leadership qualities and her successful efforts in launching the new Sales and Marketing enablement project, AWSentral.

39.    On or about April 3, 2024, Defendant announced a reorganization, purportedly to "streamline" operations and "deliver maximum impact." On the same day, Plaintiff was informed that she was among those being laid off, effective June 3, 2024—just days after

receiving high public praise for her leadership in successfully launching AWSentral.

40.    A closer inspection of the employees affected by the layoff revealed that of the 75 employees terminated, forty-five (45) were aged forty or older. More significantly, among the fifteen (15) employees offered severance packages—indicating their layoffs were not performance-related—twelve (12) were over age forty.

41.    Put another way, 60 percent of those laid off were aged forty or older, and of those employees laid off for reasons other than performance issues, 80 percent were over the age of forty.

42.    Plaintiff's initial investigation further showed that at least seven women over forty were targeted for termination.

43.    Recognizing that the layoffs disproportionately impacted women and older employees—similar to previous layoffs which Plaintiff had complaint to Defendant about—Plaintiff filed a complaint with Defendant's Ethics Line, alleging that Mr. Swearingen and Mr. Lally discriminated against her based on her gender and age in their decision to include her in the layoffs.

44.    Defendant concluded that after its investigation there were no "violations of [Defendant's] policies or Standards of Conduct."

## CAUSES OF ACTION

### First Cause of Action
### Age Discrimination
### (Violation of California Government Code § 12940(a))

45.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

46.    California Government Code section 12940, subsection (a), prohibits an employer from discharging a person from employment, or discriminating against a person in compensation or in terms, conditions, or privileges of employment because of their age.

47.    Plaintiff is a member of a group protected by the Fair Employment and Housing Act (FEHA) and is protected by the FEHA's prohibition against age discrimination in California

Government Code section 12940, subsection (a). Specifically, Plaintiff was fifty-six (56) years old when she was terminated by Defendant.

48.     As noted above, Plaintiff was a successful, award-winning employee who received two promotions in three years, and consistent praise for going above and beyond Defendant's expectations. Despite Plaintiff's documented success, on or about March 30, 2023, she was abruptly reassigned to report to Mr. Swearingen, a younger male peer who had only recently joined Defendant's organization.

49.     Furthermore, on or about July 12, 2023, Plaintiff was directed to forfeit and hand over her role as the main liaison and contact for two of Defendant's Sales Operations with whom Plaintiff had diligently cultivated relationships, to Mr. Swearingen, despite his lack of experience and familiarity with these teams. Additionally, Mr. Swearingen reduced the number of Plaintiff's direct reports from ten to four, and prohibited Plaintiff from conducting one-on-one meetings with Defendant's leadership members.

50.     On or about December 12, 2023, Plaintiff was unexpectedly placed on a Focus improvement plan by Mr. Swearingen.

51.     In addition, Plaintiff was made aware of an internal performance review authored by Mr. Swearingen referencing Plaintiff's age and experience, with Mr. Swearingen specifically noting that Plaintiff was "closed off to new ideas with [Plaintiff's] 'years of experience in product marketing'" and that Plaintiff had been "hesitant to accept suggestions due to [Plaintiff's] experience as an executive comms writer."

52.     On or about April 3, 2024, Plaintiff was terminated as part of Defendant's reorganization layoff. The layoff documents revealed that of the 75 employees terminated, forty-five (45) were aged forty or older, and among the fifteen (15) employees offered severance packages—indicating their layoffs were not performance-related—twelve (12) were over age forty.

53.     Additionally, Plaintiff's investigation revealed that at seven women aged forty or older were included in the layoff.

54.    Plaintiff is informed and believes, and based thereon alleges, that her age was a substantial motivating reason in Defendant's decision to diminish her role, place her on a Focus improvement plan, and ultimately terminate her position.

55.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered harm including lost wages and emotional distress, in an amount to be proven at trial.

56.    On information and belief, in doing the acts herein alleged, Defendant acted with oppression, malice, and in conscious disregard of Plaintiff's rights and she is therefore entitled to exemplary damages in an amount according to proof at trial.

57.    As a further proximate result of Defendant's conduct, Plaintiff was required to and did retain attorneys and is therefore entitled to an award of attorneys' fees and costs according to proof.

**Second Cause of Action**
**Gender Discrimination**
**(Violation of Cal. Gov't Code § 12940(a))**

58.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

59.    California Government Code section 12940, subsection (a), prohibits an employer from discharging a person from employment, or discriminating against a person in compensation or in terms, conditions, or privileges of employment because of their gender.

60.    Plaintiff is a member of a group protected by the FEHA and is protected by the FEHA's prohibition against gender discrimination in California Government Code section 12940, subsection (a).

61.    On or about March 30, 2023, despite Plaintiff's history of excellent performance throughout her tenure, Defendant reassigned her to report to Mr. Swearingen, a younger male colleague who had only recently joined the organization.

62.    Immediately following her reassignment, Plaintiff formally complained to her supervisors about the significant gender disparity resulting from the recent organizational changes. Specifically, Plaintiff noted that the recent reassignments, including her own, had

reduced female leadership representation by more than thirty percent (30%).

63.    Following the reassignment, Plaintiff was forced to forfeit and hand over her role as the main liaison and contact for two of Defendant's Sales Operations teams, with whom Plaintiff had previously cultivated relationships, to Mr. Swearingen, despite his inexperience with the learning content development and communications with those teams. Plaintiff's role was further diminished by Mr. Swearingen's reduction of her direct report team from ten to four and his prohibition on Plaintiff's ability to conduct one-on-one meetings with leadership members—an integral part of her success.

64.    On December 12, 2023, Defendant placed Plaintiff on a Focus improvement plan despite her consistent performance. Plaintiff successfully challenged this action, with both of her supervisors agreeing with her objections and approving the plan's removal. However, Defendant's HR department subsequently undermined this resolution by informing Plaintiff that, despite her supervisors' approval, the Focus plan would permanently remain in her employment record.

65.    On or about April 3, 2024, Plaintiff was informed that she was going to be part of a group layoff intended to "streamline" operations and "deliver maximum impact."

66.    Plaintiff's initial investigation discovered that at least seven women over forty were targeted for termination, suggesting a disproportionate impact on older female employees.

67.    Plaintiff's is informed and believes, and based thereon alleges, that her gender was a substantial motivating reason in Defendant's decision to diminish her role, place her on a Focus improvement plan, and ultimately terminate her position.

68.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered harm including lost wages and emotional distress, in an amount to be proven at trial.

69.    On information and belief, in doing the acts herein alleged, Defendant acted with oppression, malice, and in conscious disregard of Plaintiff's rights and she is therefore entitled to exemplary damages in an amount according to proof at trial.

70.    As a further proximate result of Defendant's conduct, Plaintiff was required to and did retain attorneys and is therefore entitled to an award of attorneys' fees and costs

according to proof.

**Third Cause of Action**
**Retaliation**
**(Violation of California Government Code §12940(h))**

71.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

72.    California Labor Code section 12940, subsection (h), prohibits employers from discharging or discriminating against a person because they have opposed or complaint about any practices forbidden under the FEHA.

73.    On or about March 31, 2023, Plaintiff complained to her supervisors about Defendant's recent employee reassignments and layoffs that disproportionately impacted women in leadership positions.

74.    Plaintiff reasonably believed that Defendant's conduct was discriminatory and unlawful under the law.

75.    On or about April 25, 2023, shortly after raising her concerns about Defendant's potentially discriminatory practice, Plaintiff was assigned to report to a younger, male, and recent hire, Mr. Swearingen, who also held the same level as her (L7). In addition to Plaintiff's reassignment, Plaintiff was also compelled to transfer key stakeholder relationships that she had "previously cultivated" to Mr. Swearingen, who lacked familiarity and experience with these relationships. Moreover, Mr. Swearingen reduced Plaintiff's number of direct reports from ten to four and restricted her from holding one-on-one meetings with leadership members—an integral part of her success.

76.    On or about December 12, 2023, contrary to Plaintiff's established stellar performance record, Plaintiff was placed on a Focus improvement plan. While Plaintiff initially succeeded in challenging the Focus plan, Defendant ultimately ruled that the Focus improvement plan could not be removed from her permanent employment record.

77.    On or about April 3, 2024, announced a reorganization that resulted in a mass layoff including Plaintiff. Pursuant to the terms of the layoff, Plaintiff's inclusion in the layoff

was not predicated by any performance issues.

78.    Plaintiff is informed and believes, and based thereon, alleges that her complaint about Defendant's discriminatory conduct towards women was a substantial factor in Defendant's decision to diminish Plaintiff's role, place Plaintiff on a Focus performance improvement plan, and ultimately terminate her employment.

79.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered harm including lost wages and emotional distress, in an amount to be proven at trial.

80.    On information and belief, in doing the acts herein alleged, Defendant acted with oppression, malice, and in conscious disregard of Plaintiff's rights and she is therefore entitled to exemplary damages in an amount according to proof at trial.

81.    As a further proximate result of Defendant's conduct, Plaintiff was required to and did retain attorneys and is therefore entitled to an award of attorneys' fees and costs according to proof.

### Fourth Cause of Action
### Retaliation
### (Violation of California Labor Code § 1102.5)

82.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

83.    Labor Code section 1102.5, subsection (b), prohibits an employer from retaliating against any employee who makes an internal complaint about an issue which the employee reasonably believes is a violation of state or federal statute, or noncompliance with a local, state, or federal regulation.

84.    Plaintiff reasonably believed that Defendant's employee reassignment process that resulted in a drastic reduction of women in leadership positions was discriminatory to women and thus constituted a violation of the law.

85.    Consequently, on or about March 31, 2023, Plaintiff complained about Defendant's discriminatory conduct to her supervisors. Instead of meaningfully engaging with Plaintiff's concerns or discuss the content of her concerns, Defendant simply brushed her

concerns aside and subjected her to a series of adverse employment actions until the end of her employment with Defendant.

86.    Shortly after reporting what Plaintiff believed to be unlawful conduct, Plaintiff was assigned to report to Mr. Swearingen, a male and relatively new hire who was also at the same level (L7) as Plaintiff.

87.    On or about July 12, 2023, Plaintiff was compelled to transfer ownership of two stakeholder relationships which she had "previously cultivated" to Mr. Swearingen, who had little to no familiarity and experience with said relationships; Plaintiff was forced to reduce the number of her direct reports from ten to four; and Plaintiff was restricted from holding 1:1 meetings with members of the leadership team.

88.    On or about December 12, 2024, Mr. Swearingen placed Plaintiff on a Focus improvement plan, contrary to all of the positive feedback she had previously received, which Plaintiff successfully challenged and was ultimately removed from after asserting the plan's implementation lacked proper basis.

89.    On or about April 3, 2024, Plaintiff was informed that she was going to be included in a mass layoff. Importantly, and pursuant to the terms of the layoff, Plaintiff's layoff was in no way related to any performance issues.

90.    Plaintiff is informed and believes, and based thereon, alleges that her complaint about Defendant's discriminatory conduct was a contributing factor in Defendant's decision to diminish Plaintiff's role, place Plaintiff on a Focus performance improvement plan, and ultimately terminate her employment.

91.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered harm including lost wages and emotional distress, in an amount to be proven at trial.

92.    On information and belief, in doing the acts herein alleged, Defendant acted with oppression, malice, and in conscious disregard of Plaintiff's rights and he is therefore entitled to exemplary damages in an amount according to proof at trial.

93.    As a further proximate result of Defendant's conduct, Plaintiff was required to and did retain attorneys and is therefore entitled to an award of attorneys' fees and costs

1  according to proof.

### Fifth Cause of Action
**Wrongful Termination in Violation of Public Policy**

94.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

95.    It is the policy of the State of California to prevent employers from terminating an employee because of their age.

96.    It is the policy of the State of California to prevent employers from terminating an employee because of their gender.

97.    It is the policy of the State of California to prevent employers from retaliating against an employee for complaints made related to unlawful behavior under the FEHA.

98.    It is the policy of the State of California to prevent employers from retaliating against an employee for complaints made related to unlawful behavior under the law.

99.    As discussed above, Plaintiff complained about Defendant's discriminatory conduct that disproportionally reduced women in leadership roles. From that point forward, Plaintiff's employment with Defendant was subjected to a series of adverse actions that diminished her role, unjustifiably placed her on a Focus improvement plan, and ultimately led to her termination.

100.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered harm including lost wages and emotional distress, in an amount to be proven at trial.

101.    On information and belief, in doing the acts herein alleged, Defendant acted with oppression, malice, and in conscious disregard of Plaintiff's rights and she is therefore entitled to exemplary damages in an amount according to proof at trial.

102.    As a further proximate result of Defendant's conduct, Plaintiff was required to and did retain attorneys and is therefore entitled to an award of attorneys' fees and costs according to proof.

///

///

*Stockwell v. Amazon Web Services, Inc.* USDC in the Northern District of California Case No. _____
COMPLAINT

**PRAYER**

WHEREFORE, Plaintiff prays for judgment and the following specific relief against Defendant as follows:

1.  Declaratory Judgment finding the Defendant's conduct, as alleged herein, violated Plaintiff's rights pursuant to the California Government Code and California Labor Code;

2.  For injunctive relief requiring Defendant to conduct training for supervisors, and management on the requirements of the FEHA, the rights and remedies of those who alleges a violation of the FEHA, and to permanently prohibit Defendant from engaging in any future discriminatory or retaliatory acts against Defendant's employees;

3.  Award of general damages;

4.  Award of special damages;

5.  Award of exemplary damages;

6.  Award of reasonable attorneys' fees and costs; and

7.  For such other and further relief as the Court deems proper.


Dated: March 19, 2025                    Respectfully submitted,

                                         **QUINTANA HANAFI, LLP**


                                         By: _RH_ _____
                                         Ramsey Hanafi
                                         Gelian Belong
                                         *Attorneys for Plaintiff*
                                         Joanne Stockwell

- 15 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

*Stockwell v. Amazon Web Services, Inc.* USDC in the Northern District of California Case No. _____
COMPLAINT

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 14, 2025

Gelian Belong
1939 Harrison St., Ste. 202
Oakland, CA 94612

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202503-28524114
        Right to Sue: Stockwell / Amazon Web Services, Inc.

Dear Gelian Belong:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 14, 2025

RE: **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202503-28524114
Right to Sue: Stockwell / Amazon Web Services, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency | GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

March 14, 2025

Joanne Stockwell

,

RE:   **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202503-28524114
Right to Sue: Stockwell / Amazon Web Services, Inc.

Dear Joanne Stockwell:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective March 14, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Joanne Stockwell                                      CRD No. 202503-28524114

                              Complainant,

vs.

Amazon Web Services, Inc.
410 Terry Avenue North
Seattle, WA 98109

                              Respondents

_____

**1.** Respondent **Amazon Web Services, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Joanne Stockwell**, resides in the City of **,** State of **.**

**3.** Complainant alleges that on or about **June 3, 2024**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's sex/gender, age (40 and over) and as a result of the discrimination was terminated, laid off, demoted.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, laid off, demoted.

**Additional Complaint Details:**

-1-
*Complaint – CRD No. 202503-28524114*

Date Filed: March 14, 2025

CRD-ENF 80 RS (Revised 2025/02)

VERIFICATION

I, **Gelian Belong**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On March 14, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Oakland, California**

-2-
*Complaint – CRD No. 202503-28524114*

Date Filed: March 14, 2025

CRD-ENF 80 RS (Revised 2025/02)